Bullaud, J.
This case grew out of that of Hanson et al. v. The City Council of Lafayette, decided in May, 1841, (18 La. 300,) in which we held, that the City Council had a right to construct a new levée in conformity to their ordinance, and to take sixty feet along the river from the break of the bank, and we dissolved. an injunction provisionally granted on the petition of Hanson and others, among whom was the present plaintiff, to prevent the Council from taking a part of their lots.
After this judgment was rendered, to wit: in September, 1841, the present plaintiff presented her petition to the District Court, setting forth her ownership of one of the lots fronting on the new levée, and representing, that she had been formerly disturbed in her possession by the City Council, who asserted a right to make *669 a new levée and road over a portion of her property ; that to prevent their doing so, she with others, had obtained an injunction, which was perpetuated in the District Court, but that on appeal it was dissolved and the suit dismissed; that according to the decision of the Supreme Court, the city authorities have a right to make the said levée according to their ordinance and a plan which they had adopted ; that in obedience to that judgment, she had proceeded to demolish her building from that portion of the lot over which the new levée and road were to run; and that, in order that she might know precisely the line on which she was permitted to build, she applied to the surveyor of the city of-Lafayette, who gave her the lines; that conforming to the lines thus given, and in obedience to the judgment of the Supreme Court, and in conformity to the plan with reference to which said decision was rendered, she removed and proceeded to erect her buildings on her property ; that, having thus submitted to the decree of the court, and abandoned the property claimed by the Corporation, the President and Board of Council are still maliciously and illegally vexing, harassing and disturbing her in the enjoyment of her property; that their intention is, to expropriate and expel her from her property by a course of arbitrary and oppressive proceedings under color and cloak of law; and, that they are about to enter upon and demolish and destroy the buildings and improvements on her property; that, her property is not within the incorporated limits of the city of Lafayette; that the damages already sustained, and which she will sustain, in consequence of these illegal acts and doings, is upwards of ten thousand dollars. She concludes by praying for an injunction commanding the President of the Council and the Board itself, and all other persons, not to enter upon the land of the petitioner, nor to commit any act of trespass thereon, until the further order of the court, and that said injunction may be made perpetual, and that she may have judgment for her damages, and for general relief.
An injunction was accordingly issued, on the 14th of September, and was served on the same day upon Phelps, the President of the Council.
While the injunction was in full force, and while the plaintiff was proceeding w-ith hex building on the line indicated by the *670 City Surveyor, on the 16th and 17th of the month of September, the President repaired in person, wm a number of persons under his command, and demolished a part of the wall which had been carried up one story high. The whole front wall was pulled down, and the side walls, about six or seven feet in depth back from the street.
On the 3d of November following, the defendants filed their answer containing a general denial. They aver, that they have doue nothing, and do not intend to do anything, except what may be authorized by law and by said judgment, for the construction and preservation of the levée in front of the city of Lafayette.
The case was tried by a jury, who gave a verdict for ten thousand dollars damages against the city, and they appealed, after asking unsuccessfully for a new trial.
The record contains a certificate of Hugh Grant, the City Surveyor, dated August 3, 1841, which states, that he had determined and marked the front line of the plaintiff’s property on the levée between Jackson and Philip streets, according to which, twenty-two feet three inches will be cut away from her frame dwelling on the side towards Jackson street, and twenty-one feet four inches on the side next to Philip street.
There is another certificate in the record, dated the 3d of September, signed by Buisson, the former City Surveyor, and who had made the plan in the record in the case of Hanson at al. v. The City of Lafayette. He certifies, that he had determined the front line of the plaintiff’s lot, in conformity to a plan of the new levée ordered by the City Council,'which plan is now deposited in the Supreme Court, in the proceedings above referred to. That he found the line already determined and correctly marked by stakes, which he was told, were placed there on the 3d of August. by Grant, the City Surveyor, as appears by his certificate. He further certifies, that in his opinion, the lot is within the incorporated suburbs of the parish of Jefferson.
Both the surveyors were examined as witnesses on the trial of the cause. Buisson testified, that he was the City Surveyor until July, 1841, and when the plan of the new levée was made, and that he was on the j.ury which determined the lines of the new *671 levée. He was applied to by the plaintiff for her lines in conformity to- the plan for the location of the new levée. He was applied to before the decree of the Supreme Court was rendered. He delivered to plaintiff his certificate, which is in evidence. The plaintiff called on him to examine the lines according to the certificate of Grant, and he found, upon examination, that the lines were in conformity to the plan in the Supreme Court. The line of the projected levée took about twenty feet of the plaintiff’s lot; and this levée was to serve the double purpose of a road and levée. That the projected levée is marked on the plan A, in red lines, and was all that was claimed by the city of Lafayette at the time. He knows, that after the lines were given by him and by Grant, the plaintiff commenced very near the line, but not on it. The building was of brick, and had been raised to the second story, the beams having been placed on. He was present when the President of the Council, and persons under his command, on the 16th and 17th of September, demolished the brick building. The wood' en building had been taken away as far as it was required to be. He says, that the space between the foot of the new levée and low water mark was, on an average, thirty feet, and the distance from McGary’s old house to high water mark was thirty-five feet, and to low water mark fifty-three feet, and that the new briek building is about- twenty-nine feet back of the old one, and consequently sixty-four feet from where the natural break of the bank was, prior to the construction of the new levée; that according to the decision of the jury, the line of the levée was to be as straight as practicable, before each square from Philip to Josephine street; that the line between those streets has been put a little further back than was required by the plan. *
. Grant, the successor of Buisson, testified, that soon after his appointment, he was called on for lines of property on the levée ; that he went to the Supreme Court and got the plans, and afterwards he learned that the court had decided that they were to have sixty feet from the break of the bank, wherever it should be, in each square, in as straight a line as possible, and this makes the difference between the two surveys ; that no more than sixty feet, and that barely, has been taken opposite to McGary’s property from the break of the bank ; that the defendants have taken *672 down a part of the plaintiff’s house, and there is not more than sixty feet between the front as taken down, and the break of the bank ; that the certificate which he gave was given in conformity with the plan in the Supreme Court, and the line which he gave afterwards was because he had to deviate from the first line, because he could not get the sixty feet without doing so, and the same thing has been done all along the front. He saw nothing in the decretal part of the decision of the Supreme Court to guide him in running the line for the new levée ; that he was guided by the decree bodily ; that he interpreted the opinion of the Supreme Court as allowing sixty feet from the break of the bank, before every property, whether it was given in JBuisson’s plan or not; and, by so doing, he moved back the line in some instances on an average, some seven feet.
■ The principal question which the case presents upon the merits, independently of the fact, that the vio ent proceedings of the city authorities were in defiance of the injunction existing at the time, is brought to our attention by a bill of exceptions taken by the defendants to the charge of the Judge. He told the jury, that the proper interpretation of the judgment of the Supreme Court, in the case of Hanson el al. v. The City of Lafayette, was, that the defendants should be allowed to proceed with the demolition of all buildings existing on the space reserved by them for the use of the public, according to a plan made by B. Buisson, City Surveyor, in said suit; that the said judgment gave sixty feet for the use of the public, according to the said plan, and not otherwise ; and that, if the defendants took more ground than was allowed by said plan, they were responsible in damages.
With a view of ascertaining the correctness of this charge of the District Judge, we have looked into the pleadings and decision of the court, in the case alluded to, and we find that the plan of Buisson was not contested by either party. It was with reference to it, that the jury proceeded in laying out the levée ; it was with reference to it, as the basis of the proceedings of the City Council, that the injunction was taken in the first instance in that case. All parties appear to have acquiesced in the fact, that it correctly represented the localities. The President of the Council gave his notices to remove obstructions and buildings on *673 the line of the levée ordained "by the Council in front of and through their property, according to the flan made by the City Surveyor; and the whole litigation turned upon the question whether the line marked out, was such as the law authorized. The City Surveyor was ordered to show the parties the lines when requested ; and the President and Surveyor, were authorized to remove obstructions and incumbrances, always with reference to the plan, and it was, when proceeding to perform their duty, that they were stopped by the injunction in that case. The decree was simply that the injunction should be dissolved ; but that decree necessarily authorized the city authorities to proceed in making the levée according to the plan of Buis-son. The plaintiff, after demolishing her wooden building according to the lines given by Buisson and Grant, which were ascertained by reference to the plan of Buisson in the record, and after laying the foundation of her brick building according to the same lines, apprehensive of further disturbance, sought the protection of the law, and a restraint upon the operations of the defendants, until her rights could be verified by the court. But the defendants chose to take summary justice into their own hands ; to set at defiance the authority of the court, and to proceed to demolish by force, the plaintiff’s building. The court, in our opinion, did not err in their construction of the decree of this court. The plan of Buisson was evidently considered as correct at the time, and representing the new projected levée as at sixty feet from the break of the bank of the river, although subsequently a slight change may have taken place, in consequence of the gradual encroachment of the river. Such a change did not authorize a deviation from the plan, by the sole authority of the City Council.
A motion for a new trial was made on the grounds, 1st, that the verdict was contrary to law; 2d, that the damages are excessive and entirely unsupported by evidence ; 3d, that the charge of the Judge was contrary to law.
We have already expressed our opinion, that the Judge did not err in his charge to the jury, and that the verdict is well founded in law. It only remains to inquire whether the damages are excessive.
The damages are certainly high, but by what standard are we *674 to decide that they are excessive ? The defendants are a political corporation, whose agents openly and wantonly defy the authority of a court of competent jurisdiction, interposing the shield of the law between the oppressors and their victim. The plaintiff took every legal precaution in her power to save her property from destruction, until the court could pronounce upon the new pretensions of the Corporation. If the injunction had been respected, and the case tried upon the question as to the true line, according to the judgment of this court in the case referred to, we should undoubtedly have perpetuated her injunction. The amount of the damages divided among all the citizens of that Corporation, is to each separately a trifle ; and, it cannot be pretended, in a case like this, that the party aggrieved is entitled to a bare indemnity. A lesson may be given to those who invest with power, men who are regardless of law and of private rights. If we were to send the case back to a second jury, there is no reason to suppose, that they would be less alive to the unprovoked wrongs of a fellow citizen.
Michel and Preston, for the appellants,
contended, that the judgment should be reversed on the ground that the damages were excessive, as the whole amount of injury sustained, admitting the defendants to have acted illegally, could not exceed two or three hundred dollars.